UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACQUELINE SMITH, individually and as next friend of the Estate of Danarian Hawkins, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:15-cv-2226 |
| HARRIS COUNTY SHERIFF and HARRIS COUNTY, TEXAS; | § § § § | JURY DEMANDED |
| *Defendants*. | | |

## FIRST AMENDED COMPLAINT

Plaintiff Jacqueline Smith brings this lawsuit against Defendants because the Sheriff had her beloved son, Danarian Hawkins, in the custody, care, and control of Harris County Jail, and knew he had a mental disability causing him to attempt to commit suicide while incarcerated, yet denied him participation in and benefits of its programs and facilities and failed in its duty to reasonably accommodate his disability. Defendants provided Danarian with both the means and opportunity to hang and die in his cell, thereby violating the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. §794, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12131, *et seq*. Ms. Smith brings these claims both as next friend to Danarian's estate for Danarian's injuries and on her own behalf as a statutory beneficiary of the Texas Wrongful Death Act.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and §2201.

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the events complained of occurred in this district and division.

PARTIES

3. Jacqueline Smith, also known as Jacqueline Nelson, is Danarian Hawkins' mother. Ms. Smith brings this suit on her own behalf and as next friend of Danarian's estate.

4. Defendant Harris County Sheriff is the chief law enforcement officer of Harris County; is responsible for the Harris County Sheriff's Office; and operates the Harris County Jail. The Sheriff employs and compensates the jail staff. The Sheriff is charged with ensuring that, at all times, the jail remains in compliance with federal and state law. The Harris County Sheriff can be served at 1200 Baker St., Houston, TX, 77002.

5. Defendant Harris County, Texas is a political subdivision of this State and can be served through its County Judge, the Honorable Ed Emmett, at 1001 Preston Street, Suite 911, Houston, TX 77002.

STATEMENT OF FACTS

6. As a young boy, Danarian was a ray of sunshine in his mother Jacqueline Smith's life. Danarian was creative; he liked to draw, write songs, and sing. Above all, he loved to make his family and friends laugh, and he was very good at it. Even though he was always "a little different" from the other kids, Ms. Smith remembers Danarian as an outgoing and well-liked child who was always trying to be a helpful, good son.

7. Unfortunately, diagnosed paranoid schizophrenia and bipolar disorder began to attack Danarian's mind around the time he turned 15 years old. Though he was previously a good student, his grades started slipping and he started acting out at school and at home. When his father passed away a couple years later, his behavioral and mental health problems intensified. The old Danarian would frequently still shine through, and he would make his friends and family laugh just like he used to; but increasingly, his emerging mental disabilities interfered with his ability to perform major life activities, including communicating, concentrating, working, understanding, and, ultimately, living.

8. Paranoid schizophrenia is a serious mental disability. Recognizable symptoms of schizophrenia typically manifest between the late teen years and early twenties. The earliest, prodromal symptoms of schizophrenia are difficult to diagnose in the turbulent teenage years because they may appear to be only slightly more severe than typical teen misbehavior and angst. However, as time goes on, the signs and symptoms of schizophrenia become far more pronounced and debilitating. Such symptoms may include paranoid delusions, hallucinations, and disordered thinking and speech. The damage that schizophrenia can do even to previously high-functioning individuals is well-documented and widely-recognized, including in movies such as *A Beautiful Mind*.

9. While at home, Danarian's mental disorders sadly manifested themselves in physical acts and delusional thoughts. He suffered from chronic insomnia and depression. He sometimes became convinced that his mother could read his thoughts. Danarian dazedly wandered into a neighbor's home unannounced and inexplicably sat down to watch television there. Incidents like this began to land him in the custody of Harris County Jail from time to time in his late teenage years and early twenties. Defendants and their staff had experience and records documenting Danarian's mental disability for nearly a decade's time. In spite of his disability, Danarian was determined to try to work and live a normal life. Danarian loved to work and often had a job. He would ask his mom to take him to job interviews, and on the nights before he had an interview, he would get everything ready to go, meticulously ironing his clothes and laying them out for the morning. With the money he earned, Danarian took pride in helping to support his mother; Ms. Smith remembers that Danarian would always give her a hundred dollars a week to help with her expenses, in addition to chipping in for groceries and whatever else he could. More important than the money, however, was the love that Danarian showed his mother on a daily basis. Danarian always made sure she knew how much he loved her.

10. But Danarian's mental disability intensified as he got older. He began exhibiting auditory hallucinations. Most frightening of all, when he was at one of his lowest points, Danarian

3

attempted to commit suicide. Fortunately, even though his mother did not have a staff of mental health treatment professionals and round-the-clock guards, she was able to monitor Danarian, intercede, and provide medical care to him before he could seriously hurt himself.

11. By the time he was 25, Danarian's mind was already forcing him to display obvious signs of his mental disability. In March 2012, while in the Harris County Sheriff's custody on charges of criminal mischief and misdemeanor theft, Defendants' physician documented that Danarian suffered from schizoaffective disorder, auditory hallucinations, and delusions.

12. Over the past five years, while in Defendants' custody, Danarian was prescribed medications to treat schizophrenia, bipolar disorder, and depression; namely, olanzapine, divalproex, and sertraline. During this time, Mental Health and Mental Retardation Authority employees noted that treatment recommendations were imperative to his ability to function in a community setting.

13. Defendants did not have to guess what Danarian's disability was – Harris County Jail staff diagnosed him and recognized the severity of Danarian's mental illness by administering anti-psychotic medications, temporarily sending him to outside health care providers, and designating him a suicide risk. Defendants' own doctor warned Defendants that Danarian was a danger to himself and that hospitalization was required for his safety.

14. While he was in Harris County Jail, Defendants' employees bore witness that Danarian had trouble concentrating during conversations, sometimes spoke incoherently, and became upset when others could not understand him. They saw that Danarian often did not believe he had a mental disability, refused hospitalization, and refused to take his medication, requiring Defendants to take notice and very carefully ensure he took his prescriptions. Defendants' own medical staff even warned Defendants that Danarian was a danger to himself and that hospitalization was required for his safety. Because it incarcerates people and controls every aspect of their lives, Defendants have a responsibility to accommodate people with disabilities even if they or their family members do not make requests. This duty is especially clear for Defendants with regard to people

with mental disabilities and particularly important for people at risk of suicide. Defendants were required to train their staff to identify people who are at risk of killing themselves, monitor them frequently and closely, and ensure they do not house them alone and provide them with an object with which they can hang themselves or a cell that contains an obvious ligature (tie-off) point for hanging. Defendants were on notice that hanging is by far the most common form of suicide for jail inmates.

15. In June of 2012, Danarian ended up in Harris County Jail accused of robbery after allegedly displaying a toy gun in a parking lot and asking for money. Incarceration dramatically increased his compulsion to end his own life. During the eighteen months he was awaiting trial, Danarian warned Defendants' guards that he was hearing voices and wanted to kill himself on at least six documented occasions. Through all of his stays at the Jail, Defendants' records show 18 referrals for psychiatric screening, with each one having a member of Defendants' staff writing down Danarian's suicidal behavior.

16. Danarian's mental disability, and its resulting limitations – including a compulsion to end his life while incarcerated—and the necessary accommodations of careful monitoring and avoidance of cells with ligature points and hanging implements were open, obvious, and apparent to Defendants. Harris County Jail staff actually witnessed Danarian attempting to take his own life three separate times after his June arrest. Less than a year before February 2014, Defendants put Danarian in a cell by himself on block 2J2 that contained a smoke detector and provided him with a bed sheet – in combination, well-known implements for hanging. Predictably, Danarian started to hang himself in the cell on Block 2J2, but guards intervened before there was serious tragedy on that occasion.

17. Defendants shipped Danarian between Harris County facilities, including hospitals. Defendants also routinely transferred him within Harris County Jail to the mental health unit and then back to general population. Despite the fact that Defendants clearly should not have housed

5

Danarian in the jail's general population, and despite pleas from his family to house him at a mental health facility for consistent and effective treatment, Defendants excluded Danarian from participation in and benefits of their programs and services by refusing to consistently keep Danarian at facilities that were better-equipped to accommodate his serious mental disabilities or ensure he took his prescribed medication. Instead, Defendants ignored the family's requests for accommodation and routinely placed him back in the general population after short periods of treatment, as if his mental disabilities and its limitations were not diagnosed and permanent.

18. Ms. Smith and other family members wrote letters to Harris County officials – including then-Harris County Sheriff Adrian Garcia and Judge Michael T. McSpadden – begging for accommodations to prevent Danarian's suicide. They filed inmate care concerns and personally pled with Defendants' staff and nurses to accommodate requests for accommodation to monitor him more closely, provide him with appropriate medical and counseling care to manage his mental illness, and, above all, prevent him from committing suicide. The family stressed that Danarian's father, who also suffered from paranoid schizophrenia, had committed suicide while incarcerated. Danarian's mother attempted to visit to raise his spirits and help keep him mentally healthy. On more than one occasion, she and her son both made the request for accommodation of allowing her visit, but Defendants denied these benefits and excluded him from the visitation program in a counterintuitive effort to deliberately punish him based on his mental disability for attempting to commit suicide. Defendants' treatment of Danarian was intentional discrimination solely based on his disability.

19. Defendants do not properly train or equip their staff with the proper information, training, policies, or procedures to accommodate the needs of people like Danarian who have mental disabilities that put them at risk of suicide and thereby exclude their prisoners from participation in and denies them the benefits of programs, services, and facilities. Defendants leave their jail employees dangerously ignorant and indifferent to their duties. For example, in early

6

February 2014, Danarian told at least one of Defendants' guards that he intended to commit suicide. As that guard later said, "a lot of guys say they will kill himself all the time, and we didn't think that he [Danarian] was serious."

20.  Finally, on February 5, 2014, despite the fact he was at high risk of suicide, Defendants knowingly and intentionally placed Danarian alone in a cell on block 2J2 that contained a smoke detector and provided him another bed sheet. Then Defendants' staff failed to closely or frequently monitor the young man who suffered from delusions and suicidal ideation. Tragically, one of Defendants' guards found Danarian dead – hanging from Defendants' bed sheet and using Defendants' smoke detector as the ligature point.

21.  Defendants had failed to prevent many hanging deaths of its prisoners with serious mental disabilities prior to Danarian. Despite classifying inmates as suicide risks, Defendants consistently fail to monitor their prisoners at risk of suicide carefully, to house them safely, ensure they take prescribed medicine, or to withhold implements of suicide from them. Indeed, in the two months after Defendants failed to accommodate Danarian and his mental disability, they allowed James Earl Bishop and Ethen Drake to both hang themselves to death in their cells at the Harris County Jail. Like Danarian, Defendants had Drake had on suicide watch at the time.

CAUSES OF ACTION

22.  The Rehabilitation Act requires recipients of federal funds to reasonably accommodate persons with mental disabilities in their facilities, programs, activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose. 29 U.S.C. §794. Harris County, Texas and Harris County Sheriff have been and are recipients of federal funds, and are therefore covered by the Rehabilitation Act and liable for the actions and inactions that violate this law.

23.  Title II of the ADA also applies to Harris County, Texas and Harris County Sheriff because it is a governmental entity. The ADA mandates reasonable accommodations of people with

disabilities, including Danarian Hawkins. 42 U.S.C. §12132.

24. The Harris County Jail is a governmental facility operated and run by the Harris County Sheriff, and it is Defendants' facility, program, and service under both the Rehabilitation Act and the ADA.

25. Danarian had been diagnosed with mental illnesses prior to the time described in this complaint, and was thus a qualified person with a disability protected by the ADA and a handicapped individual protected by the Rehabilitation Act. Defendants were incarcerating Danarian and knew of his disabilities, so he was a "qualified individual" for the purposes of both statutes.

26. Defendants were on notice that Danarian had a serious mental disability. Defendants and their employees conducted a review of the personal and medical history of Danarian. Since Defendants also knew that both bipolar disorder and schizophrenia are debilitating mental illnesses, and these illnesses limit major life activities such as thought, survival, and sleep, they knew Danarian was in need of accommodations. Relatives of Danarian, including his mother, sent Defendants letters reviewing his preexisting medical records. Through communication with his family, Defendants knew Danarian suffered from bipolar disorder and schizophrenia, needed psychiatric medications, and should have been housed in a mental health treatment facility, not general population.

27. Harris County, Texas and Harris County Sheriff were expressly warned of the need for further steps to accommodate Danarian. Psychiatrists, Ms. Smith, family members, and Danarian himself all warned of the severe risk of suicide as a result of his mental disability and requested accommodations. Danarian died because of the Defendants' intentional discrimination against him solely based on his disability. Defendants knew he had a serious mental disability and continuing to deny reasonable accommodations. Danarian had previously attempted to commit suicide while incarcerated, and was currently at serious risk of suicide. During his eighteen months awaiting trial, Danarian warned Defendants' staff that he was hearing voices and wanted to kill himself on six

documented occasions. Defendants documented three suicide attempts by Danarian, including when Danarian started to hang himself in a solitary cell in the same block where Defendants later placed him and he was killed by the same method – using a bed sheet tied to a smoke detector.

28.   Defendants refused to modify their facilities, services, accommodations, and programs to reasonably accommodate Danarian's mental disability and excluded him from participation in and denied the benefits of programs, services, and facilities in violation of the Rehabilitation Act and ADA. Despite many requests and knowing Danarian's mental disability and suicidal propensity, Defendants failed and refused to reasonably train their staff or equip their facilities to properly house Danarian, closely and frequently monitor him, keep him out of solitary cells with ligature points, and deny him hanging implements. Doing so would not have been an undue burden for Defendants; in fact, it already maintains the proper resources and is required to do so. Because the County's violations of the Rehabilitation Act and the ADA directly resulted in Danarian's death, Ms. Smith is entitled to recover, directly and as representative of Danarian's estate, for those damages he sustained as described in this complaint.

29.   Ms. Smith brings these claims on behalf of herself and her son's estate under the Texas Survival Statute and the Texas Wrongful Death Act, which are incorporated for standing purposes into the Americans with Disabilities Act. 42 U.S.C. §12133; TEX. CIV. PRAC. & REM. CODE §§71.002, 71.004, 71.021; *see generally Ass' n of Cmty Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

## JURY DEMAND

30.   Plaintiff respectfully requests a trial by jury.

## RELIEF REQUESTED

31.   The actions and omissions of Defendants, their agents, employees, and representatives, proximately caused and were the moving force behind the injuries and damages leading to and arising from the death of Danarian Hawkins, including damages to which Ms. Smith is entitled

individually as well as those to which she is entitled on behalf of Danarian's estate. Ms. Smith asserts claims on behalf of Danarian's estate under the Rehabilitation Act, the Americans with Disabilities Act. Ms. Smith also asserts claims on her own behalf pursuant to the standing provisions of the Americans with Disabilities Act.

32. Ms. Smith and Danarian's estate are entitled to compensatory, presumed, and nominal damages against Defendants in the maximum amounts allowed by law. Ms. Smith asserts claims on behalf of the estate for damages including, but not limited to, past physical pain and suffering, past mental anguish, and funeral and burial expenses. In her individual capacity, Plaintiff asserts claims including, but not limited to, past physical pain and suffering, past mental anguish, loss of past and future earnings, past and future loss of companionship, society, services, support, and affection of her son.

33. Defendants failed and refuse to modify their policies, training, programs, facilities, and services to accommodate people with serious mental disabilities who are likely to commit suicide such as Danarian Hawkins and excludes their prisoners from participation in and denies them the benefits of programs, services, and facilities; and Plaintiff is entitled to equitable relief, including a declaration and injunction regarding the violations under the law, reasonable accommodations of prisoners, failing to monitor prisoners at risk of suicide closely and frequently, ensuring they take their prescribed medication, housing prisoners at risk of suicide in cells with ligature points, and providing prisoners at risk of suicide with tools to kill themselves.

34. Ms. Smith also requests attorneys' fees, costs, and expenses against Defendants for the Rehabilitation Act and ADA claims, pursuant to 42 U.S.C. §12205 and 29 U.S.C. §794a(b).

PRAYER FOR RELIEF

35. THEREFORE, Plaintiff requests that the Court:

A. Award compensatory and nominal damages against Defendants through the Rehabilitation Act and the ADA as appropriate;

B. Declare as unlawful and enjoin the actions, inactions, programs, facilities, services, policies, training, and practices of Defendants that violate the ADA and Rehabilitation Act;

C. Find that Ms. Smith is the prevailing party in this case and award her all appropriate attorneys' fees, court costs, expert costs, and litigation expenses; and

D. Grant all other relief to which Plaintiff may be entitled.

Dated: October 21, 2015.

Respectfully Submitted,

/s/ Amin Alehashem
Amin Alehashem
Texas Bar No. 24073832
S. Dist. No. 1134538
James C. Harrington
S. Dist. No. 4025
State Bar No. 09048500
Wayne Krause Yang
Texas Bar No. 24032644
S. Dist. No. 31053

TEXAS CIVIL RIGHTS PROJECT – HOUSTON
2006 Wheeler Ave.
Houston, Texas 77004
  (832) 767-3650 (phone)
  (832) 554-9981 (fax)

ATTORNEYS FOR PLAINTIFF

11