United States District Court
Southern District of Texas
**ENTERED**
April 21, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JACQUELINE DENISE SMITH,   §
Independent Administrator of   §
the Estate of Danarian Hawkins,   §
Deceased,   §
      §
    Plaintiff,   §
      §
v.   §     CIVIL ACTION NO. H-15-2226
      §
HARRIS COUNTY, TEXAS,   §
      §
    Defendant.   §

## MEMORANDUM AND ORDER

Pending is Defendant Harris County's Renewed Motion to Dismiss (Document No. 38). After carefully considering the motion, response, and applicable law, the Court concludes as follows.

## I. Background

This case arises from the tragic suicide of Danarian Hawkins ("Hawkins"), which occurred while he was detained in the Harris County Jail operated by Defendant Harris County, Texas ("Defendant").[1] Hawkins's mother, Jacqueline Denise Smith ("Plaintiff"), brings suit in her capacity as the independent administrator of Hawkins's estate, seeking damages for violations of the Rehabilitation Act and the Americans with Disabilities Act. Plaintiff alleges that Hawkins suffered from diagnosed paranoid

---

[1] Document No. 21 (2d Am. Compl.).

schizophrenia and bipolar disorder beginning when he was fifteen years old, and that in the following years "his emerging mental disabilities interfered with his ability to perform major life activities, including communicating, concentrating, working, understanding, and ultimately, living."[2]

Plaintiff alleges that Hawkins's mental disorders "manifested themselves in physical acts and delusional thoughts," leading to incidents that "began to land him in the custody of Harris County Jail from time to time."[3]   Hawkins's "mental disabilities intensified as he got older," when he began experiencing auditory hallucinations and attempted suicide.[4]   Plaintiff alleges that while Hawkins was in Defendant's custody, Defendant "witnessed, diagnosed, and recognized the severity of [Hawkins's] mental illnesses by administering anti-psychotic medications, temporarily sending him to outside health care providers, and designating him a suicide risk.   Doctors warned Defendant that the dangers [Hawkins] posed to himself required accommodations for his safety."[5]   Plaintiff alleges that in May 2012, while Hawkins was in Defendant's custody "on charges of criminal mischief and misdemeanor theft, physicians documented that [Hawkins] suffered

---

[2] Id. ¶ 6.

[3] Id. ¶ 8.

[4] Id. ¶ 10.

[5] Id. ¶ 12.

from schizoaffective disorder, auditory hallucinations, and delusions."[6]

In July 2012, Hawkins was detained in the Harris County Jail while he awaited trial for robbery.[7] Plaintiff alleges that "[d]uring the last eighteen months of his life, as he awaited trial, [Hawkins] warned Harris County's guards that he heard voices and wanted to kill himself on at least five documented occasions, and he attempted to hang himself at the jail on at least three occasions."[8] Moreover, "[r]ecords dating back to 2010 show at least eight instances in which [Hawkins] spoke of hearing voices to harm himself and at least six attempts at suicide at the jail-- including five attempts to hang himself with ligatures using the jail's tie-off points."[9]

Plaintiff alleges that despite Hawkins's history and a serious overcrowding problem in the Harris County Jail, Defendant, which "does not house most of its prisoners who do not have mental disabilities by themselves," "would sometimes place [Hawkins] in a solitary cell because of the words and actions caused by his mental disability."[10] Thus, Plaintiff alleges that "Defendant knowingly

---

[6] Id. ¶ 11.

[7] Id. ¶ 15.

[8] Id.

[9] Id.

[10] Id. ¶ 17.

put [Hawkins] in solitary cells on multiple occasions because of his mental health and refusal to properly accommodate it."[11]

During one period of solitary confinement, in April 2013, Hawkins attempted to hang himself.[12]  Three months later, Hawkins again tried to kill himself, this time by hoarding his pills for a week and then taking them all at once.[13]  Plaintiff alleges that she and other family members "repeatedly contacted Defendant and requested that it house [Hawkins] safely in a manner in which he was closely monitored," emphasizing that Hawkins's father, who also suffered from paranoid schizophrenia, had committed suicide.[14]

Plaintiff also alleges that "[o]n more than one occasion, she and her son both made requests for accommodations to allow her to visit, but Harris County Jail staff denied these benefits and excluded [Hawkins] from the visitation program in a counter-intuitive effort to punish him deliberately and because of his

---

[11] Id.

[12] Id. ¶ 18.

[13] Id. ¶ 19.

[14] Id. ¶ 20.  Specifically, Plaintiff alleges that she "and other family members wrote letters to Harris county officials-- including then-Harris County Sheriff Adrian Garcia and Judge Michael T. McSpadden--begging for accommodations to prevent [Hawkins's] suicide.  They filed inmate care concerns and personally pled with Defendant's staff and nurses to follow through on requests for accommodation to monitor [Hawkins] closely, provide him with needed services, and above all, prevent him from committing suicide."  Id.

4

mental disability for attempting to commit suicide."[15]  Plaintiff
alleges that "non-disabled prisoners are not similarly punished for
impulsive actions stemming from their mental disabilities and are
not therefore denied the benefits of Defendant's visitation program
because of their disabilities."[16]

Plaintiff alleges that Defendant ignored Hawkins's and his
family's requests for accommodations and "excluded [Hawkins] from
participation in and benefits of its programs and services by
refusing to place [him] in safe housing equipped to accommodate his
serious mental disabilities; carefully monitor him; keep him out of
solitary cells; withhold implements of suicide from him; or allow
him access to the visitation program."[17]  Plaintiff further alleges
that Defendant denied Hawkins equal participation in its benefits
by failing to train and equip its employees to accommodate the
needs of patients who have mental disabilities that put them at
risk of suicide.[18]

On February 5, 2014, after Defendant placed Hawkins alone in
a cell in the same block in which he had previously attempted to
hang himself, Hawkins was found dead, "hanging from Harris County's

---

[15] Id.

[16] Id.

[17] Id. ¶ 21.

[18] Id. ¶ 22.

bedsheet and using Harris County's smoke detector as the ligature point."[19]

Plaintiff brought claims "individually and as next friend of the Estate of Danarian Hawkins" against Defendant for violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA") and the Rehabilitation Act, 29 U.S.C. § 794 (the "RA").[20] Defendant moved to dismiss for failure to state a claim or, in the alternative, for failure to join an indispensable party.[21] Plaintiff's claims in her individual capacity were dismissed in a June 10, 2016 Memorandum and Order, and Hawkins's estate was determined to have standing to bring the claims alleged although Plaintiff had not shown her capacity to represent Hawkins's estate.[22] Plaintiff then obtained and filed letters of administration duly qualifying her as independent administrator of the estate with standing to assert the claims, and the Court issued an Order modifying the case caption accordingly.[23] Defendant now renews its motion to dismiss, adopting the arguments in its previous motion.[24]

---

[19] Id. ¶ 23.

[20] See generally Document No. 21.

[21] Document No. 22.

[22] Document No. 30.

[23] Document Nos. 35, 37.

[24] Document No. 38. Defendant also briefly argues that Plaintiff still has no standing because she did not file a motion

## II. <u>Rule 12(b)(6)</u>

A.   <u>Legal Standard</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.   *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).   The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.   <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.   *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).   To survive dismissal, a

---

affirmatively asking the Court to join or substitute her as a party in her new capacity as independent administrator. <u>Id.</u> at 2-3. Plaintiff's filing of her letters of administration, which cured the defect identified in the June 10, 2016 Order, coupled with the Court's Order of October 5, 2016, accepting the testamentary letters, changing the case caption, and lifting the prior stay of proceedings, served the same purpose. *See* <u>Flores v. Cameron Cty., Tex.</u>, 92 F.3d 258, 272 (5th Cir. 1996) (construing plaintiff's notice of appointment as administrator as amendment of complaint to reflect representative capacity and allowing relation back of amended complaint to survival claims filed before plaintiff was administrator of the estate).

complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

B.   Analysis

Plaintiff alleges that Defendant violated Title II of the ADA and Section 504 of the RA.[25]   Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

---

[25] Document No. 21 ¶¶ 26-10.

8

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Because Section 504 closely tracks the language of the ADA, we analyze ADA and Section 504 claims together." Estate of A.R. v. Muzyka, 543 F. App'x 363, 364 (5th Cir. 2013) (citing Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000)); see also Hainze, 207 F.3d at 799 ("Jurisprudence interpreting either section is applicable to both.").

To plead a discrimination claim under Title II of the ADA or Section 504 of the RA, Plaintiff must allege that Hawkins "(1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the [Harris County Jail], or was otherwise subjected to discrimination, (3) because of his disability." Wright v. Tex. Dep't of Criminal Justice, No. 7:13-CV-0116-O, 2013 WL 6578994, at *2 (N.D. Tex. Dec. 16, 2013) (citing Hainze, 207 F.3d at 799). "A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination." Delano-Pyle v. Victoria Cty., 302 F.3d 567, 574 (5th Cir. 2002).

## 1. Qualified Individual with a Disability

Under the ADA, a person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Defendant briefly argues

that Hawkins was not disabled due to his schizophrenia because "[s]imilar mental conditions have generally not been considered disabilities for purposes of these statutes."[26]  The two cases on which Defendant relies are easily distinguishable.  In <u>Greene v. Potter</u>, the Fifth Circuit affirmed judgment as a matter of law on a schizophrenic plaintiff's RA claim where the plaintiff's only argument for disability was that his medication caused him to sleep late and he had failed to produce any evidence that his impairment limited his major life activities.  240 F. App'x 657, 660 (5th Cir. 2007).  In <u>Adam v. Dickinson Place Charitable Corp.</u>, the court affirmed summary judgment in a one-paragraph opinion, explaining that "Adam's conclusional allegation that his mental condition 'limits [his] life activities' is insufficient to create a genuine issue of material fact."  119 F.3d 1 (5th Cir. 1997) (unpublished).

At the motion to dismiss stage, in contrast, courts have found pleadings similar to Plaintiff's adequate to state a claim.  *See, e.g.*, <u>O'Quin v. Gautreaux</u>, No. CIV.A. 14-98-BAJ-SCR, 2015 WL 1478194, at *1 (M.D. La. Mar. 31, 2015) (plaintiff sufficiently alleged that prisoner with bipolar disorder, schizoaffective disorder, and paranoid schizophrenia was qualified individual with a disability under the ADA), *appeal dismissed* (July 7, 2015); <u>Wright</u>, 2013 WL 6578994, at *3 (noting that it was undisputed that prisoner with bipolar disorder and schizophrenia who hanged himself

---

[26] Document No. 22 at 10.

was a qualified individual with a disability under Section 504 and
the ADA). Plaintiff has alleged that Hawkins suffered from
diagnosed bipolar disorder and paranoid schizophrenia that
"interfered with his ability to perform major life activities,
including communicating, concentrating, working, understanding, and
ultimately living."[27] Plaintiff alleges that Hawkins's mental
disabilities caused him to experience auditory hallucinations,
speak incoherently, refuse to take his medications, and attempt
suicide on multiple occasions.[28] Plaintiff has sufficiently pled
that Hawkins as a detainee in county jail facilities was a
qualified individual with a disability within the meaning of the
ADA.

2.  <u>Discrimination or Exclusion from Benefits</u>

The second element of Plaintiff's claims requires her to
allege that Hawkins "was excluded from participation in or denied
the benefits of the services, programs, or activities of the
[Harris County Jail], or was otherwise subjected to
discrimination." <u>Wright</u>, 2013 WL 6578994, at *2. The Supreme
Court has held that the ADA "plainly covers state institutions
*without* any exception that could cast the coverage of prisons into
doubt," explaining that "prisons provide inmates with many

---

[27] Document No. 21 ¶ 6.

[28] <u>Id.</u> ¶¶ 10, 13, 15.

recreational 'activities,' medical 'services,' and educational and
vocational 'programs,' all of which at least theoretically
'benefit' the prisoners (and any of which disabled prisoners could
be 'excluded from participation in')."   Pa. Dep't of Corr. v.
Yeskey, 118 S. Ct. 1952, 1954-55 (1998).

Discrimination on the basis of disability under the ADA and
the RA "differs from discrimination in the constitutional sense"
because the ADA and RA contain their own definitions of
discrimination.  Melton v. Dall. Area Rapid Transit, 391 F.3d 669,
672 (5th Cir. 2004).  "The ADA expressly provides that a disabled
person is discriminated against when an entity fails to '*take such
steps as may be necessary* to ensure that no individual with a
disability is excluded, denied services, segregated or otherwise
treated differently than other individuals because of the absence
of auxiliary aids and services.'"   Delano-Pyle, 302 F.3d at 575
(citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see* McCoy v. Tex. Dep't
of Criminal Justice, No. C.A.C 05 370, 2006 WL 2331055, at *7 (S.D.
Tex. Aug. 9, 2006) ("[D]iscrimination may include a defendant's
failure to make reasonable accommodations to the needs of a
disabled person.").  "In the prison context, . . . failure to make
reasonable accommodations to the needs of a disabled prisoner may
have the effect of discriminating against that prisoner because the
lack of an accommodation may cause the disabled prisoner to suffer
more pain and punishment than non-disabled prisoners."   McCoy, 2006

WL 2331055, at *7 (citing <u>United States v. Georgia</u>, 126 S. Ct. 877, 880-81 (2006)).

Plaintiff alleges that:

> Defendant excluded [Hawkins] from and denied him participation in its services, programs, and activities, and discriminated against [Hawkins] because of his disability by housing him in conditions that endangered him, including a solitary cell with an obvious tie-off point and a hanging implement, while refusing to carefully monitor him, provide him family visitation, or equip its staff with training, polices, or procedures to make any of these reasonable accommodations. Doing so would not have been an undue burden for Defendant; in fact, it already maintains the proper resources and has an affirmative obligation to do so. These failures and refusals resulted from Defendant's intentional decisions not to accommodate [Hawkins's] known disability-related needs and ultimately caused [Hawkins's] death.[29]

Plaintiff also alleges that Defendant discriminated against Hawkins by placing him in a solitary cell and excluding him from the visitation program because of his mental disabilities while non-disabled inmates were not similarly housed by themselves or excluded from the visitation program.[30]

Defendant, relying on several district court decisions, argues that the gravamen of Plaintiff's complaint is that Hawkins was afforded inadequate medical treatment, and that the decision to place Hawkins in a single inmate cell without any restrictions was a non-actionable medical decision by a contractor, the Mental

---

[29] Document No. 21 ¶ 32.

[30] <u>Id.</u> ¶¶ 17, 20.

13

Health and Mental Retardation Authority of Harris County ("MHMRA").[31]  *See* <u>Shelton v. Ark. Dep't of Human Servs.</u>, No. 4:10CV01519 JLH, 2011 WL 1193026, at *3 (E.D. Ark. Mar. 29, 2011) ("Amber Shelton's ADA and Rehabilitation Act claims must be dismissed because they are premised on the medical decision to remove Brenda Shelton from suicide watch.  A claim for a negligent medical decision is a claim for medical malpractice, which arise under state law, not the ADA or the Rehabilitation Act."), *aff'd*, 677 F.3d 837 (8th Cir. 2012); <u>Gay v. Hammersley</u>, No. 08-59-DRH, 2009 WL 596114, at *6 (S.D. Ill. Mar. 6, 2009) ("Whether to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgment."); <u>Sahymus v. Tulare Cty.</u>, No. 1:14-CV-01633-MCE, 2015 WL 3466942, at *16 (E.D. Cal. June 1, 2015) ("Inadequate treatment or lack of treatment for Plaintiff's medical condition does not in itself suffice to create liability under the ADA.").

Plaintiff's Second Amended Complaint, which on this motion is the sole focus, expressly disclaims any claim for inadequate medical care:  "To be clear, Ms. Smith does not bring any claim for

---

[31] Document No. 22 at 1, 6-9, 19-20.  The agreement between Defendant and MHMRA attached as an exhibit to Defendant's motion is not referenced in Plaintiff's complaint or central to her claim, and therefore must be disregarded for purposes of Defendant's Rule 12(b)(6) motion.  *See* <u>Villarreal v. Wells Fargo Bank, N.A.</u>, 814 F.3d 763, 766 (5th Cir. 2016) ("A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6).").

inadequate medical care or treatment."[32]   Defendant contends that
MHMRA made the decision to release Hawkins from the Mental Health
Unit without any restrictions, but Plaintiff does not mention MHMRA
in her complaint.[33]   Instead, Plaintiff pleads that Defendant failed
reasonably to accommodate Hawkins's mental disabilities by housing
and monitoring him appropriately and that Defendant deprived him of
benefits--namely, a cellmate and access to the visitation program--
that were given to non-disabled inmates.   Such pleadings under
similar circumstances have been found adequate to survive a Rule
12(b)(6) motion.   *See* <u>Wright</u>, 2013 WL 6578994, at *4 ("Plaintiff
has adequately alleged a claim under the ADA and Rehabilitation Act
insofar as Plaintiff alleges that [the defendant] discriminated
against him by not requiring a shared cell and a cell without
'tie-off points[.]'").

---

[32] Document No. 21 ¶ 32.   Plaintiff in her response to the
motion to dismiss further disclaims any medical decision-based
claim.   *See* Document No. 25 at 8 ("Ms. Smith does not complain
about whether [Hawkins] should have been placed on [suicide] watch,
unlike the plaintiffs in <u>Shelton</u> and <u>Gay</u>.   Ms. Smith pleads, and
Defendant acknowledges, that he was on suicide watch at the time of
his death.   Instead, Ms. Smith alleges that, in spite of this fact,
Defendant nevertheless failed to accommodate [Hawkins], as required
by law, with appropriate housing in light of his known and
acknowledged disabilities, attendant behaviors, and history of
suicidal tendencies.").

[33] Regardless, "[a] public entity, in providing any aid,
benefit, or service, may not, directly *or through contractual,
licensing, or other arrangements*, on the basis of disability--
(i) Deny a qualified individual with a disability the opportunity
to participate in or benefit from the aid, benefit, or service
. . . .").   28 C.F.R. § 35.130(b)(1) (emphasis added); *accord* 28
C.F.R. § 41.51(b)(1).

Moreover, contrary to Defendant's argument, there is precedent for Plaintiff pleading discrimination claims under the ADA and RA based on Defendant's alleged failure to train its employees to accommodate Hawkins's disabilities. *See* Taylor v. Richmond State Supported Living Ctr., No. CIV.A. 4:11-3740, 2012 WL 6020372, at *3, 7 (S.D. Tex. Nov. 30, 2012) (denying Rule 12(b)(6) motion to dismiss claims under the ADA and RA for, *inter alia*, "failing to provide particularized training for staff to deal with especially severely disabled persons, like David, and assist in preventing David's injuries in his bedroom and bathroom" and "failing to provide proper training of nursing staff on acting on and reporting problems with patients").

Finally, relying on factual assertions not contained within Plaintiff's pleading, Defendant argues that Plaintiff's proposed accommodations with regard to cell assignments and cellmates are unreasonable.[34] On a Rule 12(b)(6) motion, a district court must limit its consideration to the contents of the pleadings. Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014). At a later stage of proceedings, Defendant may have opportunity to present evidence that the accommodations Plaintiff alleges would have been reasonable were in fact not reasonable, but that proof is beyond the purview of a Rule 12(b)(6) motion.

---

[34] Document No. 22 at 12-14.

16

In sum, Plaintiff has adequately pled that Defendant denied Hawkins reasonable accommodations and discriminated against him so as to satisfy the second element of Plaintiff's ADA and RA claims.

3.   Intentional Discrimination Because of Hawkins's Disabilities

The third element of Plaintiffs' claims requires her to plead that Defendant's discrimination was "because of" Hawkins's disabilities. Wright, 2013 WL 6578994, at *2. As noted above, to recover damages on her ADA and RA claims, Plaintiff must establish "intentional discrimination" by Defendant. Delano-Pyle, 302 F.3d at 574; see also Estate of A.R. v. Muzyka, 543 F. App'x 363, 365 (5th Cir. 2013) ("Congress did not intend § 504 or ADA claims to create general tort liability for the government. . . . Something more than mere negligence must be shown."). Although the Fifth Circuit has not defined intentional discrimination in this context, it has noted that "[i]ntent is usually shown only by inferences," which are generally for a fact-finder. Perez v. Doctors Hosp. at Renaissance, Ltd., 624 F. App'x 180, 184 (5th Cir. 2015) (holding that evidence that a defendant's agents "ignored clear indications that they were dealing with a hearing-impaired person with special communication needs" and failed to provide effective accommodations was sufficient to raise a fact issue as to intentional discrimination). In establishing the intentional discrimination standard, the Fifth Circuit has held that evidence of a defendant's

17

continued use of verbal commands to a plaintiff that it knew was deaf was sufficient to sustain a jury's award under the ADA and the RA. <u>Delano-Pyle</u>, 302 F.3d at 575-76.

Here, Plaintiff alleges that (1) Defendant was aware of Hawkins's disabilities, having observed, diagnosed, and documented his schizoaffective disorder, auditory hallucinations, and delusions; (2) "[d]octors warned Defendant that the dangers [Hawkins] posed to himself required accommodations for his safety"; (3) Defendant knew that hanging is the most common form of suicide for jail inmates; (4) Defendant recorded at least eight occasions on which Hawkins reported "hearing voices to harm himself" and witnessed at least five attempts by Hawkins to hang himself in jail; (5) Hawkins and his family repeatedly requested accommodations to house and monitor Hawkins appropriately to prevent his suicide; and (6) Defendant denied or ignored these requests.[35]   Moreover, Plaintiff also alleges that "Defendant knowingly put [Hawkins] in solitary cells on multiple occasions *because of his mental health*" and "excluded [Hawkins] from the visitation program in a counterintuitive effort *to punish him deliberately and because of his mental disability* for attempting to commit suicide."[36]  These allegations, taken as true, adequately support Plaintiff's claim that Defendant intentionally

---

[35] Document No. 21 ¶¶ 11-12, 15-16, 20-21.

[36] <u>Id.</u> ¶¶ 17, 20 (emphasis added).

discriminated against Hawkins because of his disabilities. Accordingly, Plaintiff has stated plausible claims under the ADA and the RA.

### 4.   Additional Arguments

Defendant argues that Plaintiff lacks standing to assert equitable claims on behalf of other unnamed inmates.[37] Defendant does not cite to any specific part of Plaintiff's Second Amended Complaint, but appears to challenge paragraph 38, which alleges:

> Plaintiff is entitled to equitable relief, such as a declaration regarding Defendant's violations under the law regarding the denial and exclusion of prisoners with mental disabilities from its programs and services, which includes measures to prevent Defendant's refusal to reasonably modify its policies and procedures or train its staff to accommodate prisoners with disabilities at risk of suicide by failing to closely and frequently to monitor them or safely house them in solitary cells that do not contain ligature points or the tools to kill themselves.[38]

Defendant characterizes the foregoing as a claim for injunctive relief that is subject to dismissal as moot because of Plaintiff's death.[39]  *See* Palo ex rel. Estate of Palo v. Dall. Cty., No. 3:05-CV-0527-D, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) ("[T]he death of a prisoner renders a claim for

---

[37] Document No. 22 at 4.

[38] Document No. 21 ¶ 38.

[39] Document No. 22 at 3.

19

prospective injunctive relief against the prison conditions moot.")
(citing <u>Bowman v. Corr. Corp. of Am.</u>, 350 F.3d 537, 550 (6th Cir.
2003)).  Plaintiff responds that she is not requesting injunctive
relief, but does not address Defendant's standing argument.[40]  To
the extent that Plaintiff's allegations can be construed as
including a request for an injunction or for equitable relief on
behalf of other inmates, such claims are dismissed.

### III. Rule 12(b)(7)

Defendant argues in the alternative that the case must be
dismissed under Rule 12(b)(7) for failure to join a required party
because MHMRA was responsible for making reasonable accommodations
and it "made the decision to discharge Hawkins from the Mental
Health Unit where he had been under suicide watch to a solitary
cell without any restrictions."[41]  Assuming *arguendo* that MHMRA is
a necessary party, the failure to join an indispensable party is a
basis for dismissal of the case only if the joinder of that
indispensable party, "would divest the court of subject-matter
jurisdiction." <u>August v. Boyd Gaming Corp.</u>, 135 F. App'x 731, 732
(5th Cir. 2005).  Because this case arises under federal law,
Defendant has not shown that the joinder of MHMRA would divest the
Court of subject matter jurisdiction under 28 U.S.C. § 1331.

---

[40] Document No. 25 at 21.

[41] Document No. 22 at 20.

20

Defendant's alternative motion to dismiss under Rule 12(b)(7) is therefore denied. *See* <u>Dryden v. Tarver</u>, No. CIV.A. 07 2048, 2008 WL 1836376, at *3 (W.D. La. Apr. 22, 2008) (denying motion to dismiss for failure to join indispensable party where jurisdiction "is based on a substantial question of federal law, not complete diversity of parties," such that joinder would not destroy federal jurisdiction).

## IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Harris County's Renewed Motion to Dismiss (Document No. 38) is GRANTED as to any claim by Plaintiff for injunctive or other equitable relief in behalf of other inmates, and such claims, if any, are DISMISSED; and Defendant's motion to dismiss Plaintiff's claims for violations of Title II of the ADA and Section 504 of the RA with respect to the decedent, Danarian Hawkins, is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 21ST day of April, 2017.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE